NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4197-17T4

INTERACTIVE BROKERS, LLC,
and KEVIN MICHAEL FISCHER,

      Plaintiffs-Appellants,

v.

RICHARD W. BARRY, as Receiver
for Osiris Fund Limited Partnership,

      Defendant-Respondent.

| APPROVED FOR PUBLICATION |
| :---: |
| December 31, 2018 |
| APPELLATE DIVISION |

Argued October 31, 2018 – Decided December 31, 2018

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000036-18.

Kevin H. Marino argued the cause for appellants (Marino, Tortorella & Boyle, PC, attorneys; Kevin H. Marino, John D. Tortorella, and Erez J. Davy, on the briefs).

Thomas W. Halm, Jr. argued the cause for respondent (Halm Law Group, LLC, attorneys; Thomas W. Halm, Jr. and Patricia A. Lauch, of counsel and on the brief).

Brian F. McDonough, Assistant Attorney General, argued the cause for amicus curiae Chief of the New Jersey Bureau of Securities (Gurbir S. Grewal,

Attorney General, attorney; Brian F. McDonough, of counsel; Katherine A. Gregory, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CURRIER, J.A.D.

In this matter, arising out of securities law violations, we conclude that a receiver acting on behalf of a defrauded entity may initiate arbitration even if the defrauded investors of the entity will ultimately benefit from any assets recouped in arbitration.

After the New Jersey Attorney General discovered Osiris Fund Limited Partnership (Osiris), a hedge fund founded by Peter Zuck, perpetrating a Ponzi scheme which defrauded its investors of more than $6.5 million, the Attorney General instituted suit against Zuck and Osiris. Osiris operated through the securities trading platform of plaintiff Interactive Brokers, LLC (Interactive), and plaintiff Kevin Michael Fisher, as an Interactive employee, assisted Osiris in using Interactive's platform.

Under a consent order, Zuck was determined to have violated securities laws and defrauded investors, and he was ordered to pay restitution of $7,564,273. Defendant Richard Barry (the Receiver) was appointed as receiver for Osiris.

In the appointment order, the Receiver was permitted to:

immediately take into possession and take title to all real and personal property of [Osiris] . . . including . . . causes of action and all such assets obtained in the future, and undertake all actions necessary or appropriate to maintain optimal value of these assets, including liquidation of any such assets.

To carry out these duties, the Chancery court granted the Receiver "full statutory powers . . . to perform the receiver's duties, including the powers delineated in N.J.S.A. 49:3-69(c)[1] and (d)[2] and . . . those set forth in N.J.S.A. 14A:14-1 [to -27] or so far as the provisions thereof are applicable."

---

[1] In relevant part, N.J.S.A. 49:3-69(c) authorizes a court to

> appoint a receiver with power to <u>sue for, collect, receive and take into his possession</u> all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, <u>choses in action</u>, bills, notes and property of every description, <u>derived by means of any practice constituting a violation of this act or any rule or order hereunder</u>, including property with which such property has been mingled, if it cannot be identified in kind because of such commingling. . . .
>
> [(emphasis added)].

[2] Under N.J.S.A. 49:3-69(d), a court

> may appoint a receiver and may restrain the corporation, its officers, directors, stockholders, and agents . . . from exercising any of its privileges or franchises . . . and in all cases from collecting or receiving any debts, or paying out, selling, assigning or transferring any of its estate, moneys, funds, lands,

(continued)

In 2017, the Receiver, as the sole claimant acting on behalf of Osiris, filed a Statement of Claim (Statement) against plaintiffs and initiated Financial Industry Regulatory Authority (FINRA) arbitration proceedings. The Statement listed seven causes of action including: 1) negligence and/or failure to supervise; 2) breach of implied/express contract, implied duty of good faith and fair dealing and industry rules; 3) aiding and abetting breach of fiduciary duty; 4) aiding and abetting common law fraud; 5) unsuitability; 6) fraudulent conveyance; and 7) unjust enrichment.

The Receiver asserted plaintiffs were required to resolve any dispute in arbitration under the FINRA Code and pursuant to the Customer Agreement (Agreement) drafted by Interactive and executed by Interactive and Zuck on behalf of Osiris. Section 33.A of the Agreement states:

> Customer [Osiris] agrees that any controversy, dispute, claim, or grievance between [Interactive], any [Interactive] affiliate or any of their shareholders,

(continued)

> tenements or effects except to the receiver appointed by the court until the court shall otherwise order.
>
> Upon the appointment of the receiver, all the real and personal property of the corporation, partnership, company, association or trust, and its franchises, rights, privileges and effects shall forthwith vest in him and the corporation, partnership, company, association or trust shall be divested of the title thereto.

A-4197-17T4

officers, directors employees, associates, or agents on the one hand, and Customer, or, if applicable, Customer's shareholders, . . . on the other hand, arising out of, or relating to, this Agreement, or any account(s) established hereunder in which securities may be traded; any transactions therein; any transactions between [Interactive] and [Osiris]; any provision of the Customer Agreement or any other agreement between [Interactive] and [Osiris]; or any breach of such transactions or agreements, shall be resolved by <u>arbitration, in accordance with</u> the rules then prevailing of any one of the following: (a) The American Arbitration Association; (b) [FINRA]; or (c) any other exchange of which [Interactive] is a member, as the true claimant-in-interest may elect.

[(emphasis added).]

The FINRA Code mandates that members submit all disputes to FINRA arbitration upon a customer's request.[3] FINRA <u>Rule</u> 12200.

In response, plaintiffs filed an action for declaratory and injunctive relief in the Chancery Division seeking: 1) a declaration that the Receiver "brought claims against [p]laintiffs in an arbitration commenced before [FINRA] that are beyond" his powers in the appointment order; and 2) "injunctive relief to prevent the Receiver from continuing . . . the FINRA arbitration." Plaintiffs alleged the claims were "beyond the scope of the Receiver's authority" because the Receiver grounded his claims on the damages incurred by Osiris's investors, rather than Osiris itself.

---

[3] Interactive was a FINRA member firm. Fischer was registered under FINRA.

The Receiver opposed plaintiffs' action and moved to compel arbitration and dismiss the complaint, contending the Agreement and Federal Arbitration Act required plaintiffs to arbitrate with FINRA. The New Jersey Bureau of Securities (Bureau), as amicus curiae, filed a brief in support of the Receiver.

After oral argument, the Chancery judge issued a May 16, 2018 written decision and order, denying plaintiffs' application for a preliminary injunction, granting the Receiver's cross-motion to compel FINRA arbitration, and dismissing the complaint. The judge concluded: 1) "the claims set forth in the Receiver's Statement of Claim [were] brought on behalf of Osiris Fund itself, not Osiris Fund's investors"; 2) the Receiver's ability to file the Statement of Claim with FINRA was authorized under the trial court's appointment order, N.J.S.A. 49:3-69(c), and N.J.S.A. 14A:14-1 to -27; 3) the Receiver's claims arose from a dispute between Interactive and Osiris, mandating a resolution in arbitration under the Agreement; and 4) the in pari delicto defense plaintiff asserted was grounded in the merits of Receiver's arbitration claims, and therefore required an arbitrator's determination.

On appeal, plaintiffs assert the Chancery judge erred in 1) denying its application for preliminary injunction and finding the Receiver's claims belonged to Osiris rather than its investors, and 2) concluding the Receiver's claims were subject to arbitration.

6                                                                    A-4197-17T4

We begin with plaintiffs' first argument, and review a trial court's decision to grant or deny a preliminary injunction for an abuse of discretion. Horizon Health Ctr. v. Felicissimo, 135 N.J. 126, 137 (1994). A trial court's decision should not be reversed unless it was "made without a rational explication, inexplicably departed from established practices, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002).

Although we agree with plaintiffs that the Receiver's authority to bring an action is limited to one asserting claims on behalf of Osiris, we are satisfied that authority was properly wielded here. The Receiver derived his authority from the statutory powers granted him under N.J.S.A. 49:3-69(c) and (d), and N.J.S.A. 14A:14-1 to -27, including the right to institute actions on behalf of Osiris.

The parties cite to federal court precedent addressing a receiver's capacity to redress injuries to the legal entity in receivership. In Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995), the defendants argued the receiver could not sue for a legal entities' injuries incurred through a Ponzi scheme as the action was "really" brought on behalf of the investors and not the corporation. Id. at 753. The Seventh Circuit opined that the corporations created by the Ponzi scheme's operator were "robotic tools" but

"nevertheless[,] in the eyes of the law[,] separate legal entities with rights and duties," which were used to improperly pay out funds rather than for legitimate investments.  Id. at 754.  The court continued,

> Now that the corporations created and initially controlled by [the operator] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefits of their investors and any creditors, we cannot see an objection to the receiver's bringing suit to recover corporate assets unlawfully dissipated by [the operator].
>
> [Id. at 755.]

The Sixth Circuit has also considered a claim that a receiver was not asserting the rights of a receivership entity, but rather asserting the rights of its investors.  Wuliger v. Mfrs. Life Ins. Co., 567 F.3d 787 (6th Cir. 2009).  In that case, the court found, although

> the [r]eceiver stated in the complaint that he [was] "the Receiver for the investors' interests," [ ] and demanded the return of the premiums for "distribution to the . . . investors, [ ] the [r]eceiver was only stating he was taking the action for the ultimate benefits of the . . . investors, who had valid claims to the lost assets."
>
> [Id. at 795.]

The court explained, however, "that is precisely the purpose of a receiver: to marshal the receivership entities' assets, to which several parties assert conflicting claims, so that the assets may be distributed to the injured parties in

8

a manner the court deems equitable."  Ibid.; see also Donell v. Kowell, 533 F.3d 762, 777 (9th Cir. 2008) (holding a receiver can bring a suit "because, although the losing investors will ultimately benefit from the asset recovery, the [r]eceiver is in fact suing to redress injuries that [the legal entity] suffered"); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 348–49 (3d Cir. 2001) (determining it is irrelevant to the issue of standing that "a successfully prosecuted cause of action [will result in] an inflow of money to the estate that will immediately flow out again to repay creditors"); SEC v. Hardy, 803 F.2d 1034, 1038 (9th Cir. 1986) ("[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate . . . for the benefit of creditors.").

It is clear a receiver's action is not invalidated, even if the return of assets to the receivership may ultimately benefits its investors.  Here, the Statement lists Osiris as its sole claimant.  The Statement charges plaintiffs with aiding and abetting Zuck in his fraudulent conduct and details their substantial participation in the wrongdoing.  These are claims that belong to Osiris, which was harmed when its funds were removed for unauthorized purposes.  It is entitled to the return of the unlawfully transferred monies.  The Receiver cannot be deprived of standing to pursue Osiris's legal remedies, even if the defrauded investors become the recipients of the recovered assets.  As a

result, we are satisfied the Chancery judge did not abuse his discretion in denying plaintiffs' preliminary injunction as they failed to demonstrate a "reasonable probability of ultimate success on the merits." Crowe v. De Gioia, 90 N.J. 126, 133 (1982).

We are also unpersuaded by plaintiffs' argument that the Receiver's claims are not subject to arbitration. In our de novo review of the arbitrability of a claim, we consider whether: 1) the parties entered into a valid and enforceable agreement to arbitrate disputes; and 2) the dispute falls within the scope of the agreement. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187-88 (2013). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Id. at 186.

Plaintiffs contend this dispute does not fall within the scope of the Agreement because Osiris is the customer under the Agreement, not Osiris's investors. In light of our resolution of this issue, the Receiver has brought claims on behalf of Osiris and not the investors, and, therefore, the Receiver is plaintiffs' customer. Since the Agreement requires "any" dispute or claim arising between Osiris and plaintiffs to be arbitrated by FINRA, this dispute falls within the Agreement's scope and is subject to FINRA arbitration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4197-17T4